MADAKET REALTY, INC. *vs.* BOARD OF APPEALS
OF NANTUCKET & another.[1]

Suffolk.   January 5, 1988. — April 11, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Zoning*, By-law. *Real Property*, Time-share ownership. *Condominiums*,
Time-share ownership. *Words*, "Dwelling," "Dwelling unit."

A town's zoning by-law forbidding transient residential facilities, including
time-sharing or time-interval ownership "dwelling units," in certain zon-
ing districts was inapplicable to a landowner's proposed use of two of
its lots located in such a district for construction of time-shared single-
family residences, where the town's by-laws appeared to distinguish
between the terms "dwelling" and "dwelling unit," and to use the term
"dwelling unit" exclusively to refer to an individual subdivision of a
multiple-unit residential building. [139-141] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Land Court Department
on March 26, 1986.

The case was heard by *Marilyn M. Sullivan*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*John Foskett & Paul R. DeRensis* for the Board of Appeals
of Nantucket.

*Paul Killeen* for the plaintiff.

*Rhoda H. Weinman*, pro se, was present but did not argue.

HENNESSEY, C.J.   The plaintiff, Madaket Realty, Inc.
(Madaket), owns two lots of land located in the town of Nan-
tucket. It applied to the town for building permits to construct
a single-family residence on each of these lots. The town, by
its zoning by-law, Nantucket Code § 139-27 (1986), has limited
the number of building permits available per year, and allocates
them on a weekly basis. The town building inspector maintains
a permit "cap line," which is a list of applications for building
permits, maintained in the order in which the applications were

---

[1] Rhoda H. Weinman, who owns land abutting one of Madaket's lots.

received and will be issued. The building inspector advised Madaket that he would not place its applications in the "cap line," because the lots had been made subject to time-share ownership (time-sharing), in contravention of a town zoning by-law. About a month later, the building inspector, on the advice of the town counsel, reversed his decision and placed Madaket's applications in the cap line. The building inspector declined to remove Madaket's applications from the cap line when requested to do so by the defendant Weinman. Weinman appealed the building inspector's decision to the Nantucket board of appeals (board). After hearing, the board voted to direct the building inspector not to grant building permits for the lots for as long as the lots were subject to time-sharing.

Madaket appealed the board's decision to the Land Court, pursuant to G. L. c. 40A, § 17, and c. 185, § 1 (j½) (1986 ed.). The Land Court judge ruled that the town zoning by-law relating to time-sharing was inapplicable to Madaket's proposed use of its lots for construction of time-shared single-family residences, and, alternatively, that the zoning by-law at issue, ·if applicable, was invalid in that it was arbitrary and unreasonable, and because it constituted a regulation of a civil relationship not incident to a lawful exercise of zoning power, in violation of art. 2, § 7 (5), of the Home Rule Amendment, as appearing in art. 89 of the Articles of Amendment to the Massachusetts Constitution. We granted the defendants' application for direct appellate review, and now affirm. Because we conclude that the by-law at issue does not apply to Madaket's lots, we do not reach the constitutional issue.

Madaket's lots are located in a zoning district which forbids "transient residential facilities," including, inter alia, "time-sharing or time-interval-ownership dwelling units."[2] The judge

_____

[2] "Time-Sharing or Time-Interval-Ownership Dwelling Unit — A dwelling unit in which the exclusive right of use, possession or ownership circulates among various owners or lessees thereof in accordance with a fixed or floating time schedule on a periodically recurring basis, whether such use, possession or occupancy is subject to either: a time-share estate, in which the ownership or leasehold estate in property is devoted to a time-share fee (tenants in common, time-span ownership, interval ownership) and a time-share lease; or time-share use, including any contractual right of exclusive

below, in concluding that the time-sharing by-law did not preclude time-share ownership of the proposed residences, reasoned that the term "dwelling unit" referred only to a separate unit within a multi-family residence, and not to the single-family residences that Madaket proposes to build.

The by-law's proscription of time-sharing applies only to a "dwelling unit," and not to a "dwelling." See note 2, *supra*. The key to this case, then, lies in the distinction between these terms as they are used in the by-laws. The by-laws define a "dwelling" as, "A *structure* used or intended to be used by one (1) family or household for living, sleeping, cooking or eating,"[3] and a "dwelling unit" as, "A *room or enclosed floor space within a dwelling* used by, or forming a habitable unit for, one (1) family with facilities for living, sleeping, cooking or eating" (emphasis added). Nantucket Code § 139-2 (1986). Thus, "dwelling" is defined in terms of the physical structure of a residential building, i.e., the edifice itself, while "dwelling unit" is defined in terms of the subdivision of the physical structure into habitable subparts, each suitable for occupancy by a family.

Usage throughout the by-laws is consistent with our interpretation of the term "dwelling" as referring to the physical structure of a residential building, and of the term, "dwelling unit" as referring to the subdivision of such a building into habitable subparts. For example, § 139-7 (A) (2), permits construction of

occupancy which does not fall within the definition of 'time-share estate,' including, but not limited to, a vacation license, prepaid hotel reservation, club membership, limited partnership or vacation bond." Nantucket Code § 139-2 (1986).

[3] Although the definition of the term "dwelling" appears to comprise only single-family residential buildings, we do not think that the town meeting intended this result. Examination of other sections of the by-laws makes clear that such a literal construction would be unwarranted. For example, § 139-2, in defining "customary home occupations," and § 139-7 (A) (1) and (2) (a), refer to a "single-family dwelling." Obviously, a distinction is being made between such uses and multiple-family dwellings. The qualifying language would be superfluous if by definition the term "dwelling" encompassed only single-family residences. In addition, § 139-8(A) refers to a "dwelling containing two (2) dwelling units," and § 139-18 (I) requires that "multi-family uses," in districts where such are permitted, have one parking space "for each 1.2 dwelling units."

a detached "secondary dwelling" on the same lot as the "principal dwelling," while § 139-7 (C) (1) "provide[s] an owner of a single-family home the opportunity to install one (1) year-round accessory apartment unit within the exterior walls of his or her home . . . in lieu of the right to construct or install a detached secondary dwelling or garage apartment on the property . . . [provided that] (2) (f) . . . [t]here shall be no more than two (2) dwelling units per lot." Taken together, these subsections allow the owner of a single-family residence to construct on his lot another single-family residential building, § 139-7 (A) (2), or, alternatively, to install within his existing building an additional accessory apartment, § 139-7 (C) (1). The former of these is a new building — a "dwelling"; the latter is a subdivision of an existing building — a "dwelling unit."

Similarly, § 139-8 (A) permits use of "(3) A dwelling containing two (2) dwelling units . . . provided that any lot on which the dwelling units are located shall not contain any additional dwellings or dwelling units . . . [and that] . . . (4) [d]welling units shall be under the same ownership as the principal dwelling." Again, these subsections distinguish a "dwelling" from a "dwelling unit," and support the view that the former term refers to a residential building, and the latter to a subdivision thereof.

The defendants contend that the by-law's proscription of time-sharing applies to both single-family and multiple-family residences. They argue that a single-family residence is simply a "dwelling" consisting of only one "dwelling unit." We think that such an interpretation is inconsistent with the sense in which these terms are used throughout the by-laws. As discussed, the by-laws appear to distinguish between these terms, and to use the term "dwelling unit" exclusively to refer to an individual subdivision of a multiple-unit residential building. The evident function of the term is as a device for counting the number of separate households occupying a residential building, i.e., as a measure of intensity of use. Where a section is intended to apply to both single-family and multiple-family residences, the by-laws expressly accomplish this by using both

terms as, for example, in § 139-8 (A) (3) and (4), see *supra* at 140. Thus, the absence of such comprehensive language in the section relating to time-sharing is evidence of the town's intent to proscribe time-sharing only in multiple-family residences. This is not an illogical distinction. The town meeting may well have reasoned that time-sharing of single-family residences would not engender the same intensity of use and its concomitant problems, as would time-sharing of multiple-family residences.

We therefore conclude, as did the judge below, that the by-law's proscription of time-sharing does not apply to the single-family residences that Madaket proposes to build.

*Judgment affirmed.*

O'CONNOR, J. (dissenting). The language of the zoning by-law itself, as well as its legislative history and good sense, separately and in combination requires the conclusion that single-family homes subject to time-sharing or time-interval ownership in Nantucket are transient residential facilities, and therefore are not permitted in the zoning district in which the plaintiff's lots lie.

It is unquestioned that the lots lie in a district from which the by-law excludes transient residential facilities. The question is whether the term "transient residential facilities" includes single-family homes subject to time-sharing, as well as multi-unit buildings. Section 139-2 of the by-law defines transient residential facilities as "[h]otels, motels, lodging or guest houses and time-sharing or time-interval-ownership dwelling units." The court concludes that a single-family home does not fit within that definition; more specifically, that a single-family home, whether or not subject to time-sharing, cannot contain a "dwelling unit." The court concludes, as did the trial judge, that the term "dwelling unit" necessarily refers to a separate unit within a multi-family residence; a "subdivision" of a structure divided into "habitable subparts." *Ante* at 139. But,

nowhere in the by-law is the term "dwelling unit" defined or described as a separate unit in a multi-unit building, or as a subpart or a subdivision. Instead, "dwelling unit" is defined in § 139-2 as "[a] room or enclosed floor space within a dwelling used by, or forming a habitable unit for one (1) family with facilities for living, sleeping, cooking or eating." The court does not explain why a room or enclosed floor space within a single-family home, used or appropriate for use as a residence for a single family, does not come within that definition. The court does not explain why such a room or space qualifies as a "dwelling unit" only if it is one of several such rooms or spaces in a single building. Read literally, the by-law treats dwelling units as habitable spaces in single *or* multiple-unit residences, and the by-law contains no inherent contradiction in language that requires manipulation by the court. A succession of occupants for brief periods is no less a transient use when it occurs in a single-family structure than when it occurs in a structure devoted to simultaneous multi-family use.

It cannot fairly be said that the Nantucket by-law unambiguously provides that single-family homes subject to time- sharing or time-interval ownership are permissible in zoning districts in which dwelling units in multi-unit buildings subject to time-sharing or time-interval ownership are prohibited. Thus, such a construction may be achieved, if at all, only by the use of interpretive aids traditionally invoked to resolve ambiguities. See *Massachusetts Mut. Life Ins. Co.* v. *Commissioner of Corps. & Taxation*, 363 Mass. 685, 690-691 & n.8 (1973); *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 478 (1986). However, those aids point the other way. One such aid is judicial recognition that "[a] local board of appeals brings to the matter an intimate understanding of the immediate circumstances, of local conditions, and of the background and purposes of the entire by-law; and so, at least in the first instance, the board's administrative view is valuable and is wanted." *Fitzsimonds* v. *Board of Appeals of Chatham*, 21 Mass. App. Ct. 53, 57 (1985). Here, the Nantucket board of appeals concluded that single-family homes subject to time-sharing or time-interval ownership are not permitted in the zon-

ing district in which the plaintiff's lots lie. In its decision, the board of appeals stated the following: "Counsel for [the plaintiff] would have us read the Zoning By-Law as if Time-Sharing Transient Residential Facilities were permitted in every residential zone if limited to a 'dwelling' as distinguished from a multiple 'dwelling unit' use. Or, as put by counsel, [the plaintiff] proposes to construct a Time-Shared 'dwelling' (presumably as a single-family residence permitted in the R-2 zone) without constructing a 'dwelling unit' and thus without the result constituting a 'Transient Residential Facility' barred in R-2. Comparing the definitions of 'dwelling' and 'dwelling unit,' such a 'dwelling' would necessarily not include within it a 'room or enclosed floor space' . . . 'forming a habitable unit for, one (1) family . . .' Clearly, [the plaintiff] strains in asking consideration of such a misreading. 'Dwelling unit' serves in counting units in a single or multi-unit 'dwelling.' 'Transient Residential Facilities' can, by definition, include time-shared dwellings with one or more dwelling units." It would be difficult to find a board's administrative view more at variance with the view adopted by the court than in the instant case.

Another aid to construction, related to that just discussed, is the legislative history of the by-law. *Owens* v. *Board of Appeals of Belmont*, 11 Mass. App. Ct. 994, 995 (1981). Like the view of the board of appeals, the relevant legislative history does not support the court's result, but, instead, clearly cuts the other way. The provisions of the by-law regarding time-sharing were adopted at Nantucket's annual town meeting held on April 7, 1982, pursuant to Article 14 on the town meeting warrant. Prior to adoption of that article, the Nantucket Planning and Economic Development Commission submitted a report to the town. A relevant paragraph taken from that report states as follows: "An important point to remember is that time-sharing does not have to be employed along with condominium ownership or be installed in multi-family structures, although clearly multi-family condos continue to be the principal ownership and structure types chosen for time-sharing thus far on the mainland. This distinction is particularly important

in Nantucket's case in view of the fact that Nantucket's zoning does not now permit the new construction of multi-family residences and those that already exist are not particularly numerous. This means that under current zoning, most future time-sharing projects would probably involve conversion of existing or newly constructed single-family homes, with the exception of what few grandfathered multi-family apartment structure[s] exist."

Not only does the legislative history contain the report just referred to, but also the town planning board submitted the following recommendation for the guidance of those voting at the town meeting: "The Planning Board RECOMMENDS FAVORABLE ACTION on Article 14 as written. The Board finds that time sharing or interval ownership constitutes a use of property which is clearly different in intensity, type, and degree from that normally associated with single family home use. The location of time sharing or interval ownership uses in heretofore stable, quiet residential neighborhoods is contrary to the general intent and purpose of the zoning by-law. The use of a structure for time sharing is very similar to the intensity, type and degree of use normally associated with such transient residential facilities as hotels, motels, and guest houses. For that reason, the Board feels that time sharing or interval ownership use should be permitted in districts which now allow transient residential facilities — Residential Commercial and Limited Commercial." It is abundantly clear that the town intended by its by-law as amended to prohibit single-family homes subject to time-sharing or time-interval ownership in the district in which the plaintiff's lots are located.

In view of its interpretation of the by-law, it was unnecessary for the court to reach the constitutional issues addressed by the trial judge and argued on appeal by the parties. In view of the by-law construction for which I argue, it is necessary that I focus on the constitutional questions at least briefly. The by-law as I would construe it does not violate art. 2, § 7 (5), of the Home Rule Amendment, as appearing in art. 89 of the Amendments to the Massachusetts Constitution as a regulation of civil relationships not incidental to a lawful exercise of zoning

power. See *CHR Gen., Inc.* v. *Newton*, 387 Mass. 351, 353-358 (1982). A "fundamental principle of zoning [is that] it deals basically with the use, without regard to the ownership, of the property involved or who may be the operator of the use." *Id.* at 356, quoting 1 A. Rathkopf, Zoning and Planning § 1.04, at 1-21 (4th ed. 1982). However, even if a zoning limitation is phrased in terms of types of ownership, it may be a valid regulation of use. See *Goldman* v. *Dennis*, 375 Mass. 197 (1978). In *Goldman*, the court concluded that "[t]he legislative body of the town could reasonably believe that conversion of a cottage colony to single family use under condominium type ownership would encourage expansion of use beyond the short summer season," and that the town could restrict that expansion of use by restricting the type of ownership. *Id.* at 199. Clearly, Nantucket could reasonably have concluded that time-share ownership encourages use of property that is significantly different in intensity and nature from conventionally owned property.

The plaintiff's due process challenge to the by-law is without merit. The test is "whether the challenged measure bears a rational relation to any permissible public object which the legislative body 'may plausibly be said to have been pursuing.'" *Sturges* v. *Chilmark*, 380 Mass. 246, 256 (1980), quoting *Blue Hills Cemetery, Inc.* v. *Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 372 (1979). As the town argues, control of the nature and intensity of use of residential areas, and the encouragement of use and ownership by persons with a significant stake in the community clearly are public objects which the town meeting "may plausibly be said to have been pursuing" in adopting the time-sharing provisions of the by-law. I would reverse the judgment below.