INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS,
LOCAL 433 *vs.* MEMORIAL PRESS, INC., & another.[1]

No. 89-P-439.

Plymouth. April 12, 1991. - July 29, 1991.

Present: BROWN, PERRETTA, & PORADA, JJ.

*Agency*, Scope of authority or employment. *Consumer Protection Act*, Responsibility of employer. *Contract*, Performance and breach. *Damages*, Breach of contract, Nominal damages.

On a claim by a union against a newspaper alleging a violation of G. L. c. 93A by reason of an intentional misprint in a paid advertisement placed by the union, the judge correctly entered judgment in favor of the newspaper where the misprint was the work of a newspaper employee acting beyond the scope of his employment and contrary to the newspaper's policies and interests. [140-142]

In a civil action the judge properly reduced the jury's award to reflect only actual damages for breach of contract, where the evidence with respect to consequential damages was speculative and conjectural. [142]

In a civil action in which the plaintiff properly recovered damages for breach of contract, it was not entitled to additional "nominal damages." [143]

CIVIL ACTION commenced in the Superior Court Department on July 25, 1980.

The case was tried before *J. Harold Flannery*, J.

*John J. Twomey* for the plaintiff.

*James C. Heigham* for Memorial Press, Inc.

PORADA, J. The subject of this action is an intentional misprint in a paid advertisement placed by the plaintiff (union)

---

[1]The other defendants named in the complaint were Old Colony Memorial, Memorial Press Group, Kate Simmons, Leo Fontaine, Roger W. Miles, and Gary Quelett. The complaint was dismissed as to all defendants except Memorial Press, Inc., and Roger W. Miles, and judgment entered against the latter defendants. Memorial Press, Inc., was the only party who prosecuted this appeal.

in the Old Colony Memorial, a newspaper, published by the defendant, Memorial Press, Inc. (newspaper), in Plymouth. The union was in the midst of collective bargaining negotiations with the town of Plymouth. The union's demands included an increase in the number of police officers in the department and the continuation of a "minimum manning" clause, which provided for a minimum number of police officers to be on duty for a particular shift. After criticism from one of the selectmen that its officers spent too much time at a local doughnut shop, the union placed an advertisement in the newspaper to explain their reasons for their collective bargaining demands. The headline of the advertisement at issue stated: "Plymouth Police Department Is Undermanned." When the advertisement was printed in the October 25, 1979, issue of the newspaper, the second "e" in the word "Department" looked like a doughnut.

Based on this misprint, the union brought an action in the Superior Court for libel, deceit, negligence, breach of contract, and violation of G. L. c. 93A. The case was tried before a jury. At the conclusion of the evidence the judge directed a verdict on the deceit count, reserved judgment on the nonjury claim for violation of G. L. c. 93A, and submitted the other claims on special questions to the jury. In response to the special questions, the jury found the misprint was intentional; the misprint was an expression of opinion (and the jury did not, consequently, reach any issue of defamation); the newspaper had breached its contract with the union; and the union was entitled to an award of damages for breach of contract in the amount of $35,000. The newspaper then filed a motion to reduce the jury's award of damages to $274.05, the price of the advertisement. The judge reduced the jury's award of damages to $275.05, the price of the advertisement plus one dollar in nominal damages for the impairment of the union's bargaining credibility, and found in favor of the newspaper on the claim for violation of G. L. c. 93A.

In this appeal, the plaintiff claims the judge erred in dismissing its claim under G. L. c. 93A and in reducing its

award of damages from $35,000 to $275.05 for breach of contract. We affirm the judgment as modified.

1. *The claim under G. L. c. 93A.* The judge ruled that the newspaper could not be held liable for a violation of G. L. c. 93A, because the intentional misprint was the work of an employee acting outside the scope of his employment. The union argues that the newspaper should be held responsible for the employee's conduct in this case on the grounds that the employee acted within the scope of his employment and public policy considerations mandate the imposition of liability.

Under G. L. c. 93A, an employer cannot be held liable for the intentional conduct of an employee acting outside the scope of his employment. *Wang Labs., Inc.* v. *Business Incentives, Inc.,* 398 Mass. 854, 859 (1986). To determine if an employee's conduct is within the scope of his employment the same test for imposing vicarious liability on employers for the tortious conduct of their employees is used. *Ibid.* "[T]he finder of fact must consider whether the conduct complained of is of the kind the employee is hired to perform, whether it occurs within authorized time and space limits, and whether 'it is motivated, at least in part, by a purpose to serve the employer.' " *Pinshaw* v. *Metropolitan Dist. Commn.,* 402 Mass. 687, 694 (1988), quoting from *Wang Labs., Inc.* v. *Business Incentives, Inc.,* 398 Mass. at 859. See Restatement (Second) of Agency § 228 (1957).

Here, it is undisputed that the first two prongs of the test have been met: the alteration of the advertisement occurred in the regular course of the production of the newspaper after the proof of the advertisement had been approved by the union. The sole remaining issue is the employee's motivation, which was a question of fact for the fact finder (here, the judge). *Pinshaw* v. *Metropolitan Dist. Commn.,* 402 Mass. at 696. The union argues that the employee, whose identity is unknown, acted in part to advance his employer's interest. It alleges that the misprint undermined the union's response to a comment critical of the police printed in a previous edition

of the newspaper[2] and promoted the sale of newspapers by fueling controversy in the community. The judge found that the misprint was unauthorized, uncondoned, and contrary to the newspaper's policies and interests. This finding was not clearly erroneous.

The advertising salesman, the production manager, and the president of the newspaper all testified that the act was unauthorized and unknown to them until after the publication. There is nothing in the record to indicate that the unknown employee was motivated by a desire to promote the newspaper's interests. Indeed, "[t]he fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business." Restatement (Second) Agency § 235 comment c. A finding was justified that the misprint caused as much embarrassment and harm to the newspaper as it did to the union; and such a finding is not inconsistent with the fact that the newspaper previously had made an editorial-like comment (see note 2, *supra*) which could be interpreted to have been at odds with the union's position.

The union also argues that public policy considerations support the imposition of liability. Its argument is two-fold: (1) the imposition of liability on the newspaper would further the legislative purpose of G. L. c. 93A to deter business entities from committing unfair and deceptive acts, *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 766 (1980); and (2) the newspaper is in the best position to control the abuses and excesses of its employees. While it is true that the newspaper is in the best position to control its employees, an employer cannot be held strictly liable under G. L. c. 93A for every unfair or deceptive act committed by its employees under the law of this Commonwealth. *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. at 859. Liability may only be thrust upon an employer if the employee's conduct

---

[2]An item in the "Thanks/no thanks" column of the newspaper thanked a Plymouth selectman "for the quote of the month. Speaking of keeping police cruisers in assigned areas around Plymouth, [the selectman] said: 'We should have a Dunkin' Donuts in every precinct.'"

meets the test of vicarious liability set forth in the *Wang* case.

The union also claims that the judge erred in ruling that a misprint within the confines of a paid advertisement is a constitutionally protected opinion. While the judge ruled that he did not disagree with the jury's finding that the misprint was an expression of opinion, he found it was unnecessary to harmonize constitutional protections and G. L. c. 93A prohibitions, see *National Comm. on Egg Nutrition* v. *Federal Trade Commn.*, 570 F.2d 157, 161-164 (1977), cert. denied, 439 U.S. 821 (1978), because the case could be disposed of on other grounds. Because we, likewise, have decided this case on other grounds, we need not address this constitutional issue. See *Madaket Realty, Inc.* v. *Board of Appeals of Nantucket*, 402 Mass. 137, 138 (1988).

2. *Breach of contract.* The judge reduced the jury's award of damages from $35,000 to $275.05, the price of the advertisement plus an award of one dollar in nominal damages for the impairment of the union's effectiveness as the bargaining representative of its members. The union argued that it was entitled at least to $35,000 in consequential damages based on evidence that the town's police officers lost some $270,698 in overtime pay because of the failure to retain a minimum manning clause in the collective bargaining agreement and that individual police officers and their families suffered ridicule and outrage following the misprint. In order to recover damages, the union's proof had to be based on solid foundation of fact and not "left to conjecture, surmise or hypothesis." *White Spot Constr. Corp.* v. *Jet Spray Cooler, Inc.*, 344 Mass. 632, 635 (1962), quoting from *John Hetherington & Sons* v. *William Firth Co.*, 210 Mass. 8, 22 (1911). Here, the judge properly found that the causal relationship between the misprint and the loss of overtime pay through the elimination of the minimum manning provision in the collective bargaining agreement was much too speculative and conjectural and that the ridicule and embarrassment suffered by individual police officers was not recoverable where they were not parties to the action.

We conclude, however, that the judge erred in making an award of one dollar for nominal damages in addition to the price of the advertisement. Nominal damages are awarded where there is no showing of pecuniary loss. *White Spot Constr. Corp.* v. *Jet Spray Cooler, Inc.*, 344 Mass. at 634. 5 Corbin, Contracts § 1001 (1964). Here, the union proved it was entitled to recover the price of the advertisement, $274.05. Accordingly, the judgment is to be modified by deleting the amount of $275.05 and substituting the amount of $274.05. As so modified, the judgment is affirmed.

*So ordered.*