**Thomas M. WALSH, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW, Respondent.\***

**No. 01–AA–1053.**

District of Columbia Court of Appeals.

Argued March 18, 2003.
Decided June 12, 2003.

---

\* Petitioner originally named as respondent the District of Columbia Department of Consumer and Regulatory Affairs. Because petitioner seeks review of a decision of the District of Columbia Board of Appeals and Review, we have corrected the caption to so reflect. *See F.W. Woolworth Co. v. District of Columbia Bd. of Appeals & Review*, 579 A.2d 713 n. 1 (D.C.1990).

Thomas M. Walsh, pro se.

Michael F. Wasserman, Assistant Corporation Counsel, with whom Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before TERRY, FARRELL, and WASHINGTON, Associate Judges.

FARRELL, Associate Judge:

Petitioner Walsh seeks review of a decision of the District of Columbia Board of Appeals and Review (the BAR or the Board) rejecting his appeal from fines imposed by an Administrative Law Judge (ALJ) of the District of Columbia Department of Consumer and Regulatory Affairs (the DCRA). Walsh was held to have violated D.C.Code § 47–2828(a) (2001) by failing to obtain a housing business license and 11 DCMR § 3203 *et seq.* (2003) by failing to obtain and post a certificate of occupancy for a house he had rented to students.

■ We hold first that the BAR lacked subject matter jurisdiction to consider the fines related to a certificate of occupancy. The applicable regulations, 11 DCMR § 3203.1 and § 3203.3, are part of the Zoning Regulations of the District of Columbia, *see* 11 DCMR § 100.5, and fall within the jurisdiction of the Board of Zoning Adjustment, not the BAR. *See* D.C.Code § 2–1803.01 (2001) ("[A]ppeals involving infractions of ... the District of Columbia Zoning Regulations shall be entertained and determined by the District of Columbia Board of Zoning Adjustment"). The BAR therefore should have dismissed Walsh's appeal from the ALJ's ruling with respect to the certificate of occupancy. *See Felicity's, Inc. v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 817 A.2d 825, 829 (D.C.2003).[1]

The sole remaining issue is whether Walsh was required to obtain a housing business license under D.C.Code § 47–2828(a). We hold that the findings of the BAR on this point were based on a misunderstanding of law, namely an erroneous determination that Walsh's property was being rented as a "multiple dwelling residence." In this court, the DCRA's counsel does not defend that rationale, but argues that a housing business license was still required because the entire residence constituted "one ... dwelling unit[ ]" within the meaning of § 47–2828(a). For the reasons stated below, we remand the case to the BAR for consideration of that argument.

## I.

In the fall of 1999, Walsh owned a ten-bedroom house located at 1232 Newton Street, N.E., which he rented to a group of eight to ten students from Catholic University. Each student signed the master lease, individually accepting liability for the residence as a whole. The lease did not assign specific bedrooms to the individual renters; such arrangements were left to the occupants.[2] Each student paid Walsh a portion of the monthly rent individually (rather than submitting a single check covering the full amount), but in all other ways the students appear to have acted collectively in dealing with the owner.

On September 23, 1999, a housing inspector for the DCRA visited Walsh's house and subsequently filed a Housing Violation Notice alleging three civil infractions: (1) failure to obtain a housing business license as required by D.C.Code § 47–2828(a); (2) failure to obtain a certificate of occupancy under 11 DCMR § 3203.1; and (3) failure to post a certificate of occupancy under 11 DCMR § 3203.3. The Housing Violation Notice was not sent to Walsh, but a Notice of Infraction based on the violation notice

---

1. The ALJ's order expressly advised Walsh that matters concerning violation of a D.C. Zoning Regulation are appealable to the Board of Zoning Adjustment.

2. It appears that each student had his or her own room, but private bedrooms were not guaranteed by the terms of the lease.

was sent to him on October 6, 1999. The Notice of Infraction charged the same three violations, cited the appropriate regulations, and listed the amounts of the fines. Walsh responded to the notice on October 15, 1999, denying the violations and requesting a hearing.[3]

At a hearing before an ALJ on November 17, 1999, the DCRA inspector testified that he considered Walsh's dwelling to be a "rooming house," and that he had issued the citations based on that understanding. Walsh countered chiefly that his property was not a rooming house (the DCRA now concedes the property did not meet the definition of a rooming house, see 14 DCMR § 199.1 (1991)), and further that he did not need a housing business license because he was leasing the entire property as a "single family home" and not as "separate dwelling units." In an order dated December 14, 1999, the ALJ found Walsh in violation of D.C.Code § 47–2828(a) and the occupancy permit regulations, and imposed fines and court costs in the amount of $1040.00.[4] In doing so, the ALJ classified Walsh's residence as a "rental property with multiple dwelling units."

Walsh appealed the rulings on all three infractions to the BAR, re-asserting his original defenses and also arguing that the ALJ had "improperly served as [an] advocate for [the] DCRA" in the hearing below.[5] In a Decision and Order dated July 13, 2001, the BAR ruled as follows:

> We find no error in the decision .... [O]wners of residential buildings who rent one or more dwelling units must be licensed [see D.C.Code § 47–2828(a)]; a dwelling unit is, inter alia, unsurprisingly, a room used for sleeping; and when the Newton Street house was converted to a multiple dwelling residence, a certificate of occupancy was mandatory. Walsh therefore, used his property in such a manner [as] to bring it within the licensing authority of District law.

## II.

██ Upon review of an administrative decision, "deference is properly accorded an agency's interpretation of the administrative regulation it enforces unless it is plainly erroneous or inconsistent with the regulation." Snider v. District of Columbia Bd. of Appeals & Review, 342 A.2d 50, 51 (D.C.1975) (citing Udall v. Tallman, 380

---

3. Throughout this litigation, Walsh has maintained that he did not receive proper notice of the infractions. He was not prejudiced by his failure to receive the Housing Violation Notice, however, because the Notice of Infraction, although somewhat lacking in detail, satisfied the requirements of D.C.Code § 2–1802.01 and 16 DCMR § 3101.3 (1998), as well as of due process. See generally Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

  Walsh also argues that he was entitled to an abatement period in order to cure the alleged violations. This argument was correctly rejected by the ALJ:

  > [P]ursuant to 14 DCMR § 105.2, a respondent is required to have a "reasonable time for the performance of any act required by the notice [of violation]." However[, Walsh] was required, prior to [the] letting of

the subject premises, to secure both a certificate of occupancy and a housing business license[.] While the government may allow a respondent to have a period of time to abate or cure a housing deficiency in situations such as where there is peeling paint in a dwelling unit, it is a very different situation when a respondent is operating without a housing business license or a certificate of occupancy. [Emphasis added.]

4. Although the ALJ found Walsh in violation of all three regulations, he did not fine him for failing to post a certificate of occupancy because it would have been "an impossibility" for Walsh to "post that which [he did] not have."

5. We reject that argument as entirely without factual basis.

U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965)). This court's review generally is limited to ensuring that the agency "(1) made findings of fact on each material, contested factual issue, (2) based those findings on substantial evidence, and (3) drew conclusions of law which followed rationally from the findings." *Britton v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 681 A.2d 1152, 1155 (D.C.1996) (citations omitted). Importantly, though, we must be mindful that "it is the rationale of the [agency] that we ... review, not the '*post hoc* rationalizations' of its counsel." *Williams–Godfrey v. District of Columbia Bd. of Elections & Ethics*, 570 A.2d 737, 738 (D.C.1990) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (further citation omitted)).

D.C.Code § 47–2828(a) reads in relevant part: "[O]wners of residential buildings in which one or more dwelling units or rooming units are offered for rent or lease shall obtain from the Mayor a license to operate such business." In applying this provision, the BAR accepted the DCRA's classification of Walsh's house as a "multiple dwelling" residence, a term defined in 14 DCMR § 199.1 to mean "any residential building containing three (3) or more dwelling units, three (3) or more rooming units, or any combination of dwelling or rooming units totaling three (3) or more." The BAR further understood "dwelling unit" to mean "a room used for sleeping," and on that basis it considered Walsh to have violated D.C.Code § 47–2828(a), because he operated an unlicensed residence containing three or more dwelling units.

■ The Board's reading of the pertinent regulation was flawed. A "dwelling unit" is defined as "any habitable room or group of habitable rooms located within a residential building and forming a single unit which is used or intended to be used for living, sleeping, *and the preparation and eating of meals.*" 14 DCMR § 199.1 (emphasis added). The Board's equation of a "dwelling unit" with "a room used for sleeping" thus omitted a necessary element from the definition. As Walsh's home contained only a single, common-area kitchen, it could not be categorized as a multiple dwelling residence within the meaning of the regulations.

■ The DCRA concedes this deficiency in the BAR's analysis, but argues in its brief that a housing business license is necessary whether or not the residence offered for rent is a "multiple dwelling." The DCRA maintains that since every residential building has a place to sleep and a place to prepare food, any such building must include—or constitute—at least one "dwelling unit" within the meaning of 14 DCMR § 199.1; and because D.C.Code § 47–2828(a) applies to "owners of residential buildings in which *one or more* dwelling units ... are offered for rent" (emphasis added), it follows that any residential building must be licensed before it can be offered for rent wholly or in part.

Walsh disputes the DCRA's argument, first on the ground that the DCRA never made it to the Board, and second with reasoning of his own. He asserts that under § 47–2828(a) a "dwelling unit" must be distinct from the building that contains it, citing *Madaket Realty, Inc. v. Board of Appeals of Nantucket*, 402 Mass. 137, 521 N.E.2d 723, 725 (1988) (for purposes of time-share proscription, town zoning by-law distinguished between a "dwelling," meaning "the physical structure of a residential building," and a "dwelling unit," referring to "the subdivision of the building into habitable subparts"). He points to the fact that D.C.Code § 47–2828(a) and 14 DCMR § 199.1, respectively, identify a dwelling unit as existing "in" and "within"

a residential building. According to Walsh, the DCRA's definition of a residential building as a dwelling unit is thus akin to confusing "an egg ... with the carton in which it is sold."

 We choose not to resolve this dispute over the statutory meaning of "one or more dwelling units," at least for now. "[A]n administrative order can only be sustained on the grounds relied on by the agency," *Jones v. District of Columbia Dep't of Employment Services*, 519 A.2d 704, 709 (D.C.1987); *see National R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 420, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992), and not on agency counsel's *post hoc* rationalizations. *Williams–Godfrey*, 570 A.2d at 738. The DCRA did not make its present argument to the BAR, and the Board therefore did not consider it. We believe that it must do so, if for no other reason than because of the argument's breadth: it would mean, as the DCRA's counsel acknowledged at oral argument, that any residential owner in the District who rents out a room or rooms in a house that contains a place to prepare and eat meals must obtain a housing business license. While the statutory phrase may indeed accommodate that broad meaning, there is enough ambiguity in it to necessitate the remand we order, which will insure both that the argument newly advanced by DCRA's counsel is the agency's considered position, and—if so—that the administrative board with special expertise in this area of the law has evaluated that understanding of the statute.

### III.

To summarize, in affirming the ALJ's decision the BAR relied on an erroneous definition of a "dwelling unit" to categorize Walsh's house as a "multiple dwelling," and so had no occasion to consider the interpretation of D.C.Code § 47–2828(a)

advanced by the DCRA for the first time in this court. We therefore remand the case to the BAR for further consideration of the housing business license issue; at the same time, we direct it to dismiss Walsh's appeal from the fines related to failure to obtain and post a certificate of occupancy.

*So ordered.*