*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-AA-561

VERNICE BOWLES, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT.

On Petition for Review from an Order of the
Compensation Review Board
(CRB-113-13)

(Argued June 16, 2015                    Decided August 6, 2015)

*Michael J. Kitzman* for petitioner.

*Stacy L. Anderson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. Alikhan*, Deputy Solicitor General, were on the brief, for respondent.

Before WASHINGTON, *Chief Judge*, BLACKBURNE-RIGSBY, *Associate Judge*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*:  Vernice Bowles petitions this court for review of a Department of Employment Services ("DOES") determination, pursuant to the D.C. Workers Compensation Act of 1979 ("WCA"), as amended, D.C. Code § 36-301 *et seq.* (2012 Repl.), that she suffered only a 10% permanent partial disability

("PPD") to her right leg, due to a 2008 work-related knee injury. The DOES Administrative Law Judge ("ALJ") determined that Bowles suffered the 10% PPD; the DOES Compensation Review Board ("CRB") affirmed. In her petition for review, Bowles argues, *inter alia*, that the CRB erred in affirming the ALJ's Compensation Order because the ALJ's error, relying on evidence not in the record, was not harmless and the ALJ erred in failing to explain how it calculated Bowles's 10% PPD. We agree. This court cannot discern how the ALJ calculated its 10% PPD determination, let alone assess whether the ALJ's error was indeed harmless. Accordingly, we grant Bowles's petition for review, vacate the 2014 CRB Decision and Order, and remand for further proceedings consistent with this opinion.

## I.     FACTS

At the time of her initial right knee injury, Bowles worked for Gentle Touch Senior Care as a Residential Counselor. She assisted developmentally-challenged individuals in various aspects of daily living including cooking, cleaning, grocery shopping, caring for their children, and accompanying them to doctor's appointments. On May 30, 2008, while assisting a disabled patient at Target, Bowles slipped on a red liquid substance on the floor and sustained injuries to her

lower back, right knee, and both hips. The 2009 DOES Compensation Order found that Bowles's knee injury arouse out of and in the course of her employment and ordered Gentle Touch Senior Care to pay Temporary Partial Disability ("TPD") benefits.

In April 2009, Bowles began working as an escort, accompanying elderly patients to medical appointments, for Washington Nursing Facility ("WNF"). In June 2011, "While walking to open the patio [at work], Bowles fell, soaked her pants in the liquid on the floor, and injured her right knee and ankle." "Bowles was diagnosed with mild right knee strain secondary to her injuries of June 7, 2011." The 2012 DOES Compensation Order, issued on October 1, 2012, found that Bowles's knee sprain was caused by her June 2011 work-related fall and accordingly ordered WNF to pay Bowles temporary total disability ("TTD") benefits from June 7, 2011, to July 25, 2011. "Dr. Frederic L. Salter [of Phillips and Green] stated that, based on his examination of May 25, 2011, Bowles had not suffered any additional significant injury and her scheduled surgery [to address her 2008 knee injury] would proceed without further care for the June 7, 2011 injury." He recommended that Bowles "remain out of work" until her surgery.

Dr. Salter performed a partial lateral meniscectomy and debridement of

partial ACL tear on Bowles on July 26, 2011. He examined her three days after the surgery and determined that she was not fit for working duty, but upgraded her from crutches to a cane. Dr. Meyer evaluated Bowles on August 15, 2011, and observed that her "[g]ait is mildly right antalgic." Ultimately, he allowed her to return "to work as her job is essentially sedentary." After receiving permission from Dr. Meyer, about three weeks after the surgery, Bowles returned to her previous position at WNF. Dr. Phillips conducted his final reevaluation of Bowles on June 19, 2012 and concluded that she "ambulates with a mildly right antalgic gait" and suffered a 42% PPD:

> Impression: patient has a permanent injury caused by the accident of 05-30-08. Using the Fifth Edition of the AMA Guides to the Evaluation of Permanent Impairment, she has the following permanent partial impairment to the right lower extremity: Table 17.5, the antalgic gait, 17%; Table 17.6, 1.8 cm of calf atrophy, 8%; Table 17.33, partial medial meniscectomy, 2%, with an additional 2% for the damage to the cruciate ligament; Table 17.10, 8-degree flexion contracture, 8%, with an additional 5% for pain coming to 42% of the lower extremity within a reasonable degree of medical certainty based on the Fifth Edition of the AMA Guides to the Evaluation of Permanent Impairment. Patient has reached maximum medical improvement.
> . . .
> Work status: as far as the patient's activity, I would not want her working on her feet all day and certainly would not want her climbing any stairs and/or ladders on a routine basis.

Bowles was ultimately fired from WNF on July 23, 2012 for reasons unrelated to her knee injuries.

*DOES Compensation Order.* Bowles filed a claim for WCA benefits with DOES on the grounds that she suffered a 42% PPD (loss-of-use, schedule award) to her right leg as a result of the May 30, 2008 injury to her leg, while employed at Gentle Touch Senior Care. ALJ Linda F. Jory presided over a full evidentiary hearing on July 31, 2013. At the hearing, Bowles submitted the 2009 DOES Compensation Order and medical reports from Dr. Phillips, Dr. Meyer, and Dr. Salter as exhibits. In addition, she testified under oath about residual problems with her knee:

> Q. What problems are you having at this point with your knee?
> A. I snap, I crack, I pop, I get stuck, I go through it all.
> Q. When you say you get stuck, what do you mean? What happens when you get stuck?
> A. If I sit too long, I mean, I can't - - if I stand up, I can't walk. I have to stand for a while [sic] and then like try to walk it off. But my [leg] is just - - it gives out on me. I go through everything with my legs.
> . . .
> Q. What types of trouble do you have with stairs?
> A. I try not to go up them. I go up - - I have two flights of steps. I go up, I stay up; not unless I have a reason to come back down. I try to stay away from steps.
> Q. Okay. Why do you try to stay away from

steps?
    A.    Because I hurt.

Gentle Touch Senior Care submitted as exhibits, *inter alia*, medical records from Howard University Hospital and the 2012 DOES Compensation Order; these exhibits were related to the 2011 right knee sprain that Bowles suffered while employed at WNF. Gentle Touch Senior Care attempted to show that Bowles's PPD was a result of the intervening knee sprain, so that it would not be responsible for paying Bowles additional disability compensation.

The ALJ first found that Bowles's PPD was causally related to the 2008 work incident that occurred while she was employed by Gentle Touch Senior Care. The 2012 DOES Compensation Order referenced Dr. Slater's report that Bowles "had not suffered any additional significant [right knee] injury as a result of the June 7, 2011 fall," and thus weighed against Gentle Touch Senior Care's argument that Bowles's 2011 injury severed the causal connection between her 2008 injury and her resulting PPD. The ALJ concluded that Gentle Touch Senior Care's evidence was not "specific or comprehensive enough to sever the existing causal connection between claimant's alleged PPD and the 2008 injury."

Next, the ALJ determined that Bowles suffered only a 10% PPD to her right

leg, despite her claim of 42% PPD. The ALJ consulted the AMA Guides to discredit Dr. Phillips's 42% disability rating because a "[r]eview of Table 17.5 reveals that the Guides suggest a maximum of 7% for mild antalgic gait." The ALJ also mentioned that "Dr. Meyer found only a very mild effusion and a mildly right antalgic gait" and "Dr. Phillips 42% impairment rating is also inconstant with [Bowles's] testimony." In addition, the ALJ did "find it reasonable that [Bowles] still has pain in her knee while climbing or descending stairs and cannot question Dr. Phillips' minor atrophy finding." Ultimately, the ALJ explained its 10% PPD calculation as follows:

> In sum, it is concluded that based on a complex of factors, taking into account the amount of physical impairment caused by the surgical procedure and zero potential for future wage loss, claimant has sustained some permanent partial impairment of the right leg based on her pain and atrophy and is entitled to a 10% permanent partial disability rating to the right leg.

*2014 CRB Decision and Order*. Bowles petitioned the CRB for review of the ALJ's Compensation Order on the grounds that, *inter alia*, the ALJ erroneously relied on facts not within the record to discredit Dr. Phillips's medical report. The CRB agreed that the ALJ erred when it "reached a medical opinion by taking official notice of the AMA Guides without affording the parties an opportunity to

rebut any fact officially noticed in the documents." However, the CRB ultimately affirmed the ALJ Compensation Order—"Because the ALJ relied on sufficient evidence in the record to discount Dr. Phillips' impairment rating, the error in going beyond the record to do so is harmless." Bowles petitioned this court for review of the 2014 CRB Decision and Order.

## II. LEGAL ANALYSIS

The touchstone of this court's review of an agency decision is *Chenery I* and *Chenery II*. *SEC v. Chenery Corp. ("Chenery I")*, 318 U.S. 80 (1943); *SEC v. Chenery Corp. ("Chenery II")*, 332 U.S. 194 (1947). Congress saw fit to entrust agencies with discretion to exercise judgment in their particular fields of expertise. *Chenery I, supra*, 318 U.S. at 94. However, this discretion comes at a price. The basis for the agency's judgment "must be set forth with such clarity as to be understandable," otherwise the reviewing court cannot exercise its duty to review. *Chenery II, supra*, 332 U.S. at 196. If the reviewing court cannot exercise its duty of review, it will not "intrude upon the domain which Congress has exclusively entrusted to an administrative agency" by supplying a proper rationale for the agency's decision. *Chenery I, supra*, 318 U.S. at 88. Instead, the reviewing court remands the case to the agency for further proceedings. *Id.* at 95.

In agency cases where the disputed issue is "complicated and understandably prone to technical, often shorthand terminology, there is a substantial risk that agency action will be too conclusional—not elaborated enough—for a non-expert court confidently to review." *Washington Pub. Interest Org. v. Public Serv. Comm'n*, 393 A.2d 71, 78 (D.C. 1978), *supplemented sub nom. Washington Pub. Interest Org. v. Public Serv. Comm'n*, 404 A.2d 541 (D.C. 1979).

> Perhaps paradoxically, therefore, the less equipped the court is to do the job of the agency, and thus the more deference the reviewing court must show to the agency's authority and expert judgment, the greater the agency's obligation is to explain exactly why it chooses to take a particular course of action. The broad scope of an agency's authority is the very reason why that agency is obliged to explain itself with precision. If such broad authority implied, to the contrary, that the agency need not explain itself, or could do so in shortcut fashion, then judicial review would be a nullity. While our own authority to intrude on agency functions is therefore limited, our authority and responsibility to find out why an agency acts as it does is considerable.

*Id.* at 78-79. This explanation of the role of judicial review serves as a useful backdrop for our analysis in this case.

We must evaluate whether (A) the CRB erred in affirming the ALJ's 10%

PPD calculation and (B) the CRB erred in concluding that the ALJ's use of evidence not in the record (AMA Guides) was harmless error.[1]

## A.  INSUFFICIENT EXPLANATION OF PPD CALCULATION

We first consider whether the ALJ's 10% PPD calculation was supported by substantial evidence.  The ALJ explained Bowles's disability level as follows:

> In sum, it is concluded that based on a complex of factors, taking into account the amount of physical impairment caused by the surgical procedure and zero potential for future wage loss, claimant has sustained some permanent partial impairment of the right leg based on her pain and atrophy and is entitle to a 10% permanent partial disability rating to the right leg.

Unfortunately this court cannot discern which values the ALJ assigned to each factor (impairment, pain, atrophy, etc.) to reach the 10% PPD level and therefore cannot say whether substantial evidence supports the ALJ's determination.

---

[1]  Given this court's disposition of the case, we need not evaluate Bowles's two other claims of error—whether substantial evidence supported the ALJ's decision to discredit Dr. Phillips's medical report and whether the ALJ failed to take into account the differences in the physical requirements of the claimant's pre- and post-injury employment when assessing wage loss.

We review the CRB's Decision and Order which affirmed the ALJ's Compensation Order—we do not directly review the ALJ's determination on appeal. *Jones v. District of Columbia Dep't of Emp't Servs.*, 41 A.3d 1219, 1221 (D.C. 2012). "Under the Administrative Procedure Act, this court may overturn a decision of the CRB only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *McNeal v. District of Columbia Dep't of Emp't Servs.*, 917 A.2d 652, 656 (D.C. 2007) (citing D.C. Code § 2-510 (a)(3) (2001)). "We affirm an administrative agency decision when (1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *Georgetown Univ. v. District of Columbia Dep't of Emp't Servs.*, 971 A.2d 909, 915 (D.C. 2009). "An administrative order can only be sustained on the ground relied on by the agency." *Walsh v. District of Columbia Bd. of Appeals & Review*, 826 A.2d 375, 380 (D.C. 2003) (citation and internal quotation marks omitted). When the ALJ fails to "explain [its] reasoning in arriving at a disability award" such that "we are unable to meaningfully review the decision to determine whether it is based on substantial evidence," we must remand the case back to the CRB. *Jones, supra*, 41 A.3d at 1225.

This court in *Jones* addressed a very similar analysis in an ALJ's

Compensation Order. *Jones, supra*, 41 A.3d at 1219. The *Jones* opinion described

the ALJ Compensation Order as containing the following explanation for its PPD

calculation:

> In consideration of the evidence in the record as detailed above, and setting aside any consideration of wage loss but presuming an effect on claimant's earning capacity, claimant qualifies for a 7% permanent partial disability award for her left leg disability.

*Id.* at 1226 (internal quotation marks and emphasis omitted). This court ultimately

found that "because the ALJ did not explain her reasoning in arriving at a disability

award of 7%, we are unable to meaningfully review the decision to determine

whether it is based on substantial evidence, applying proper legal principles." *Id.*

at 1225. "How the ALJ determined that the disability award should be 7%—and

not, for example, 1%, 10% or 30%—is a complete mystery, however." *Id.* at 1226.

This court remanded the case for the agency to essentially show its work and

explain how exactly it calculated the 7% PPD.

The ALJ in this case put forth an analysis very similar to the ALJ in *Jones*.

The ALJ in this case found that Bowles suffered an impairment of the right leg and

suffered both pain and atrophy. The ALJ considered the "amount of physical

impairment caused by the surgical procedure," "zero potential for future wage loss," pain, and atrophy and ultimately determined that Bowles suffered a 10% PPD in her right leg. How the ALJ reached this conclusion is a mystery; this court cannot discern which values were assigned to each factor that add up to 10%.

When the ALJ evaluated the "amount of physical impairment caused by the surgical procedure," it discredited Dr. Phillips assignment of 17% disability for antalgic gait because a "[r]eview of Table 17.5 reveals that [the Fifth Edition of] the [AMA] Guides suggest a maximum of 7% for mild antalgic gait." The ALJ also notes that "Dr. Meyer found only a very mild effusion and a mildly right antalgic gait." The ALJ uses Table 17.5 and Dr. Meyer to discredit Dr. Phillips' medical report, but does not decide a level of impairment suffered by Bowles as a result of the surgical procedure, although this number is apparently incorporated into the 10% disability level. In addition, Dr. Phillips opined that Bowles suffered 8% disability for atrophy and 5% for pain. The ALJ then goes on to state that "claimant still has pain in her knee while climbing or descending stairs and cannot question Dr. Phillips' minor atrophy finding." No combination of 7%, 8%, and 5% add up to just 10%.

On this record we are unable to affirm the CRB's conclusion that the ALJ's

determination was supported by substantial evidence.

## B.  UNCLEAR IF ALJ'S ERROR WAS HARMLESS

We next consider whether the CRB erred in holding that the ALJ's reliance on evidence outside the record, namely the Fifth Edition of the AMA Guides, was harmless error "[b]ecause the ALJ relied on sufficient evidence in the record to discount Dr. Phillips' impairment rating."  DOES's brief on appeal merely argues that "Ms. Bowles's challenges to this determination and the CRB's decision to affirm are unavailing."  We review *de novo* but cannot conclude that the ALJ's error was harmless.  *See Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.*, 929 A.2d 865, 870 (D.C. 2007).

The ALJ discredited Dr. Phillips assignment of 17% disability for antalgic gait because a "[r]eview of Table 17.5 reveals that [the Fifth Edition of] the [AMA] Guides suggest a maximum of 7% for mild antalgic gait."  Unfortunately, the Fifth Edition of the AMA Guides was not admitted into evidence.  The CRB found that the ALJ erred by going beyond the record and reaching an independent medical opinion "without affording the parties an opportunity to rebut any fact officially noticed in the documents."  This finding is not contested in the petition

for review.[2]   The CRB goes on to explain that the error is harmless because "the ALJ did not rely solely on the AMA Guides to reduce Dr. Phillips' impairment rating."   The CRB cites Dr. Meyer's finding that Bowles suffered "only a very mild effusion and a mildly right antalgic gait" and Bowles's testimony that she gets "stuck" and has trouble traversing stairs.

Given that the ALJ's explanation of its 10% PPD calculation was not sufficient to afford this court the opportunity to review for substantial evidence, we also cannot evaluate whether the ALJ's reliance on evidence not in the record was harmless error.

\* \* \* \* \*

"It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be

---

[2]   At oral argument, the government noted that D.C. Code § 32-1508 (U-i) (2012 Repl.) ("In determining disability pursuant to subparagraphs (A) through (S) of this subsection, the most recent edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment may be utilized, along with the following 5 factors . . . ."), appears to contemplate that an ALJ will consider the AMA Guides when determining a percentage disability; however, the CRB's finding of error, for the ALJ's use of the AMA Guides, was challenged before this court.

precise from what the agency has left vague and indecisive." *Chenery II, supra*, 332 U.S. at 196 97. We grant Bowles's petition for review, vacate the CRB Decision and Order, and remand to the CRB for further action consistent with this opinion.

*So ordered.*