*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-AA-873

FILED 06/7/2018
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

SOLOMON ABEBE, PETITIONER,

v.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

US SECURITY ASSOCIATES HOLDINGS and
LIBERTY MUTUAL HOLDINGS INSURANCE COMPANY, INTERVENORS.

On Petition for Review of a Decision of the Compensation Review Board of the
District of Columbia Department of Employment Services
(CRB-44-16)

(Submitted June 1, 2017                         Decided June 7, 2018)

*Lauren E. Pisano* was on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the statement was filed, and *Loren L. AliKhan*, Deputy Solicitor General at the time the statement was filed, filed a statement in lieu of brief for respondent.

*Christopher R. Costabile* was on the brief for intervenor.

Before BECKWITH and MCLEESE, *Associate Judges*, and FARRELL, *Senior Judge*.

BECKWITH, *Associate Judge*: Petitioner Solomon Abebe was injured on the job and filed a workers' compensation claim for disability benefits. His claim was granted in part and denied in part, and the Compensation Review Board (CRB) affirmed. Mr. Abebe petitions for our review. Agreeing that the CRB erred in affirming the compensation order, we vacate its decision and remand for further proceedings.

**I.**

Mr. Abebe worked as a security guard at CVS, a job that required him to stand for eight-hour shifts and watch for shoplifters, among other duties. While he was at work one day in February of 2013, Mr. Abebe approached a group of people he believed were attempting to shoplift. They attacked him, punching and kicking him and leaving him unconscious on the floor.

Dr. Christopher Magee treated Mr. Abebe for his injuries, diagnosing him with post-traumatic calcific bursitis of the right shoulder, lumbosacral strain, contusion of both knees, and right ankle sprain. Dr. Magee performed arthroscopic surgery to excise and debride a torn labral in Mr. Abebe's right shoulder. An MRI of his right knee ruled out any tears.

Mr. Abebe underwent two additional medical examinations prior to the hearing on his workers' compensation claim. Dr. Harvey Mininberg performed an

independent medical evaluation (IME) at Mr. Abebe's request and opined that he suffered from a 36% permanent partial impairment to his right upper extremity and a 32% permanent partial impairment to his right lower extremity as a result of the attack. And Dr. Robert A. Smith twice examined Mr. Abebe at his employer's request. Dr. Smith opined that Mr. Abebe suffered from an 8% permanent partial impairment to his right shoulder, 4% of which was preexisting and 4% of which resulted from the attack. Dr. Smith indicated that Mr. Abebe had 0% impairment in his right knee.

Mr. Abebe sought awards of permanent partial disability (PPD) of 36% to his right upper extremity and 32% to his right lower extremity, in line with Dr. Mininberg's opinion, and an evidentiary hearing was held before an administrative law judge (ALJ). The ALJ subsequently issued a compensation order in which he found that Mr. Abebe was credible and continued to experience pain and impairment, but in which he also rejected Dr. Mininberg's PPD ratings entirely and Dr. Smith's evaluation "to the extent that it does not properly account for Mr. Abebe's subjective complaints." The ALJ granted Mr. Abebe's claim in part, awarding him compensation for an 8% PPD to his right upper extremity but no compensation for his right lower extremity. The ALJ found that, whereas Mr. Abebe could previously stand for an eight-hour shift and ran and rode his bicycle regularly, after the assault he struggled with pain, could stand for no longer than

twenty minutes at a time, and could not "even press the pedal" of his bike due to pain.[1] The ALJ nevertheless believed himself constrained to deny a compensation award for Mr. Abebe's knee injury because "the evidentiary record provides no basis for a specific percentage of disability based upon those subjective complaints."

Mr. Abebe appealed to the Compensation Review Board, arguing that the 0% PPD award for his right knee was not supported by substantial evidence in the record. The CRB affirmed, although on somewhat different grounds from the ALJ. The CRB referred to an intervening decision of this court, *M.C. Dean, Inc. v. District of Columbia Department of Employment Services*, 146 A.3d 67 (D.C. 2016), in which we held that "[a] schedule award should not increase based on functional impairment of personal and social activities because those are beyond the economic scope of the Act." *Id.* at 76–77. The CRB concluded that evidence that Mr. Abebe "is unable to run and cycle as he did prior to the injury" had an insufficient nexus to Mr. Abebe's earning capacity and therefore could not be the basis for a PPD award.

---

[1] Mr. Abebe testified at the hearing that he was unable to return to work after the incident. The employer has not contended that he left his job for reasons unconnected to his injuries.

## II.

When reviewing a CRB order, we determine whether the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Asylum Co. v. District of Columbia Dep't of Emp't Servs.*, 10 A.3d 619, 624 (D.C. 2010). "Although we review the decision of the CRB, we cannot ignore the ALJ's compensation order which is the subject of the CRB's review, and we will remand if the ALJ's factual findings are not supported by substantial evidence." *M.C. Dean*, 146 A.3d at 72. We review legal conclusions de novo. *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012).

The CRB's decision relied on our holding in *M.C. Dean*, in which we held that the claimant's diminished ability to "sleep through the night," shop for groceries, and "participate in recreational activities" did not justify increases in his PPD award. 146 A.3d at 76. In the absence of "a nexus between [the claimant's] personal and social activities and his wage earning capacity, . . . the disability award should not have been increased by non-occupational consequences of an injury." *Id.* This case is unlike *M.C. Dean*, however, and the impairments the ALJ found Mr. Abebe suffered from are not analogous to those personal and social activities. The CRB, and the employer in its brief to this court, focus on Mr. Abebe's testimony that he is, in the words of the CRB, "unable to run and cycle as he did prior to the injury." If this were the entirety of Mr. Abebe's impairment,

this case might resemble *M.C. Dean*, but the ALJ also found that Mr. Abebe "credibly testified that he can no longer stand for eight hour shifts" because he suffers from pain after standing for twenty minutes and needs to sit down. The ALJ also found that walking is "difficult" for Mr. Abebe and running is "much harder." There is a clear nexus between Mr. Abebe's abilities to stand, walk, and run and his wage earning capacity, and the CRB erred in concluding otherwise.

The CRB also erred in concluding that the ALJ's compensation order was supported by substantial evidence. Although the ALJ found that Mr. Abebe suffered from these aforementioned impairments, he believed himself constrained by our decisions in *Jones v. District of Columbia Department of Employment Services*, 41 A.3d 1219 (D.C. 2012), and *Bowles v. District of Columbia Department of Employment Services*, 121 A.3d 1264 (D.C. 2015), to issue a 0% PPD award for Mr. Abebe's knee injury because "the evidentiary record provide[d] no basis for a specific percentage of disability." In both *Jones* and *Bowles*, we vacated and remanded CRB decisions affirming compensation orders that gave no indication of how they arrived at the PPD percentage awarded. *Jones*, 41 A.3d at 1226 ("How the ALJ determined that the disability award should be 7%—and not, for example, 1%, 10% or 30%—is a complete mystery, however."); *Bowles*, 121 A.3d at 1269–70 ("How the ALJ reached this conclusion is a mystery; this court cannot discern which values were assigned to each factor that add up to 10%.").

The holding of these cases was that ALJs must explain their reasoning in arriving at disability awards.

We can understand the dilemma *Jones* and *Bowles* created for the ALJ in this case. Having discredited Dr. Mininberg's evaluation entirely and Dr. Smith's evaluation "to the extent that it does not properly account for Mr. Abebe's subjective complaints," but crediting Mr. Abebe's testimony about his impairments, the ALJ had no simple way of arriving at a PPD percentage. But as 0% is also a percentage requiring justification, the ALJ's solution did not fix the problem.

It is true, as the ALJ observed, that the claimant carries the burden of proving the nature and extent of a disability. *See Golding-Alleyne v. District of Columbia Dep't of Emp't Servs.*, 980 A.2d 1209, 1213 (D.C. 2009). But the ALJ implicitly found that Mr. Abebe had met this burden, insofar as the ALJ found that Mr. Abebe had diminished ability to stand, walk, and run. All that remained was to assign a numerical percentage to Mr. Abebe's proven disability, and this task fell to the ALJ. The absence of credited percentages to adopt from medical evaluations neither excused the ALJ from this obligation nor disproved the impairments Mr. Abebe had already demonstrated by a preponderance of the evidence. *See* 12 Arthur Larson et al., Larson's Workers' Compensation Law § 128.02 (Matthew Bender, rev. ed., 2017) (stating that while it sometimes may be

"impossible to form a judgment on the relation of the employment to the injury, or relation of the injury to the disability" without a medical diagnosis, "this is not invariably so," and "[i]n appropriate circumstances, awards may be made when medical evidence on these matters is inconclusive, indecisive, fragmentary, inconsistent, or even nonexistent"); *cf. Negussie v. District of Columbia Dep't of Emp't Servs.*, 915 A.2d 391, 398–99 (D.C. 2007) (rejecting the idea that ALJs are required "to choose a disability percentage rating provided either by the claimant's or the employer's medical examiner"). As we have previously observed, "the determination of disability is not an exact science," but an ALJ's decisionmaking must not be arbitrary. *Jones*, 41 A.3d at 1224. The 0% PPD award for Mr. Abebe's knee appears arbitrary in light of the ALJ's findings regarding his disability, and the CRB erred in concluding that the award was supported by substantial evidence.

Concluding that the CRB erred in holding that no nexus existed between Mr. Abebe's impairments and his wage earning capacity and in affirming the ALJ's PPD award as supported by substantial evidence, we vacate its decision and remand for further proceedings consistent with this opinion.

*So ordered.*